Ronald S. Kravitz (SBN 129704)
MILLER SHAH LLP
456 Montgomery Street, Ste. 1900
San Francisco, CA 94103
Telephone: (415) 429-5275
Facsimile: (866) 300-7367
Email: rskravitz@millershah.com

D. Joshua Staub (SBN 170568)
LAW OFFICE OF D. JOSHUA STAUB
13015 Washington Blvd.
Los Angeles, CA 90066
Telephone: (310) 929-5269
Fascimile: (213) 816-1932
Email: josh@djoshuastaub.com

*Attorneys for Plaintiff and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE BAIRD, individually, and on behalf of all others similarly situated, and on behalf of the HYATT CORPORATION RETIREMENT SAVINGS PLAN,<br><br>        Plaintiff,<br><br>  v.<br><br>HYATT CORPORATION; HYATT CORPORATION BENEFITS COMMITTEE and its members,<br><br>        Defendants. | Case No. 2:22-cv-01620-DSF-Ex<br><br>**PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDS OF ATTORNEYS' FEES, EXPENSES, AND CASE CONTRIBUTION AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  May 20, 2024<br>TIME:   1:30 PM<br>DEPT.:  Courtroom 7D<br>JUDGE: Hon. Dale S. Fischer<br><br>Complaint Filed:      March 10, 2022 |

**TO: THE COURT AND TO ALL COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff, Lance Baird, ("**Plaintiff**"), on behalf of the Settlement Class ("**Settlement Class**") and the Hyatt Corporation Retirement Savings Plan (the "**Plan**"), hereby moves the Court to grant Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, Attorneys' Fees, Expenses, and Case Contribution Award ("**Motion**") pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement, Preliminarily Certifying a Class for Settlement Purposes, Approving Form and Manner of Settlement Notice, Preliminarily Approving Plan of Allocation, and Scheduling Fairness Hearing entered on January 10, 2024 (hereinafter, "**Preliminary Approval Order**"). (ECF # 63.)  Defendants, Hyatt Corporation and the Hyatt Corporation Benefits Committee (collectively, "**Defendants**," and with Plaintiff, the "**Parties**") do not oppose the **Motion.**

The hearing on this Motion will be held on May 20, 2024 at 1:30 p.m. in the Courtroom of the Honorable Dale S. Fischer, located at the United States District Court for the Central District of California, First Street Courthouse, located at 350 West 1st Street, Courtroom 7D, Los Angeles, CA 90012.

The Parties have worked cooperatively to effectuate the notice plan and Plaintiff now moves the Court to enter an order granting Final Approval of the proposed Settlement ("**Settlement**") as fair, reasonable, adequate, and in the best interests of the Settlement Class, as well as granting the related applications. Plaintiff brings this Motion pursuant to Federal Rule of Civil Procedure 23(e), and it is supported by the below Memorandum of Points and Authorities; the Declaration of Ronald S. Kravitz ("**Kravitz Decl**."); the Declaration of D. Joshua Staub ("**Staub Decl**."); the Declaration of Sam Schwartz-Fenwick ("**Schwartz-Fenwick Decl**."), the Declaration of Cornelia Vieira ("**Vieira Decl**.") on behalf of the Settlement Administrator, Strategic Claims

Services ("**SCS**"), and supporting exhibits; the pleadings, records, and papers on file in this action; and all other matters properly before the Court.

Plaintiff stands ready to provide any additional information or materials that the Court may require in connection with its consideration of the Motion.

Dated: April 5, 2024                    Respectfully submitted,

                    /s/ *Ronald S. Kravitz*

                    Ronald S. Kravitz (SBN 129704)
                    MILLER SHAH LLP
                    456 Montgomery Street, Ste. 1900
                    San Francisco, CA 94103
                    Telephone: (415) 429-5275
                    Facsimile: (866) 300-7367
                    Email: rskravitz@millershah.com

                    D. Joshua Staub (SBN 170568)
                    LAW OFFICE OF D. JOSHUA STAUB
                    13015 Washington Blvd.
                    Los Angeles, CA 90066
                    Telephone: (310) 929-5269
                    Fascimile: (213) 816-1932
                    Email: josh@djoshuastaub.com

                    *Attorneys for Plaintiff and the Putative Class*

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………..1

I.    INTRODUCTION………………………………………………………………………1

II.   BACKGROUND……………………………………………………………………….3

A. The Settlement……………………………………………………………………….3

   1. The Settlement and Released Claims…………………………………….3

   2. Distribution of Settlement Funds to Class Members…………………4

B. Preliminary Approval of Class Notice…………………………………………4

C. The Settlement and Related Applications Have Been Reviewed and Authorized by an Independent Fiduciary on Behalf of the Plan………..5

III.  THE COURT SHOULD MAINTAIN CERTIFICATION OF THE SETTLEMENT CLASS AND GRANT FINAL APPROVAL OF THE SETTLEMENT………………………………………………………………………..6

A. The Court Has Already Provisionally Certified the Settlement Class and Appointed Plaintiff's Counsel as Class Counsel……………………..6

B. The Settlement is Fair, Reasonable, and Adequate………………………..6

   1. The Strength of Plaintiff's Case and the Risk, Expense, and Complexity of Further Litigation…………………………………………..8

   2. The Settlement Recovery……………………………………………………9

   3. The Stage of Proceedings and Extent of Discovery Completed…….10

   4. The Experience and Views of Class Counsel…….…………………….10

   5. The Reaction of Class Members…………………………………………11

C. Plaintiff's Request for Attorneys' Fees, Expenses, and Case Contribution Award is Fair, Reasonable, and Appropriate…………….12

   1. The Results Achieved……………………………………………………..13

   2. The Risk of Litigation……………………………………………………..14

   3. The Skill Required and Quality of Representation…………………….14

   4. The Contingent Nature of the Fee and Financial Burden Carried by Plaintiff…………………………………………………………………….15

i

     5.  <u>Awards in Similar Cases</u>……………………………………………...15

     6.  <u>Lodestar Cross-Check</u>…………………………………………………..16

     7.  <u>The Court Should Award the Requested Reasonable Expenses to Plaintiff's Counsel</u>…………………………………………….………18

     8.  <u>The Court Should Award the Requested Case Contribution Award.</u>...............................................................................................19

**IV.**    **CONCLUSION**………………………..…………………………………21

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ............................................................7

*Chalmers v. City of Los Angeles*,
    796 F.2d 1205 (9th Cir. 1986) ..........................................................17

*Churchill Village LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................11

*City of Burlington v. Dague*,
    505 U.S. 557 (1992) ..........................................................................17

*Cotter v. Lyft, Inc.*,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) .........................................7, 8

*Cunningham v. Cnty. of Los Angeles*,
    879 F.2d 481 (9th Cir. 1988) ............................................................17

*Deaver v. Compass Bank*,
    2015 WL 8526982 (N.D. Cal. 2015) ...................................................9

*Does I v. Gap, Inc.*,
    2002 WL 1000073 (D.N. Mar. Is. May 10, 2002) .............................10

*Fleming v. Impax Lab'ys Inc.*,
    2021 WL 5447008 (N.D. Cal. 2021) ...................................................9

*Hefler v. Wells Fargo& Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................................19

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ..........................................................................17

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) .................................................16

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................. 12, 18

*In re Chiron Corp. Secs. Litig.*,
   2007 WL 4249902 (N.D. Cal. Nov. 30, 2007) ................................................. 18

*In re Lithium Ion Batteries Antitrust Litig.*,
   2017 WL 1086331 (N.D. Cal. 2017) (overruling................................................. 9

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................. 13

*In re Mercury Interactive Corp.*,
   618 F.3d 988 (9th Cir.2010) ................................................................. 12

*In re MyFord Touch Consumer Litig.*,
   2019 WL 1411510 (N.D. Cal. 2019) ........................................................... 9

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................. Passim

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................. 19

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................. 7

*Johnson v. Fujitsu Tech. and Bus. Of Am., Inc.*,
   2018 WL 2183253 (N.D. Cal. 2018) ....................................................... 8, 20

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ................................................................. 17

*Kruger v. Novant Health, Inc.*,
   2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ............................................. 16

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ....................................................... 20

*McCown v. City of Fontana*,
   565 F.3d 1097 (9th Cir.2009) ................................................................. 18

iv

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) ................................................................. 17

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
  2017 WL 6623031 (N.D. Cal. Dec. 28, 2017) ...................................... 13

*Ridgeway v. Wal-Mart Stores, Inc.*,
  269 F. Supp. 3d. 975 (N.D. Cal. 2017) ................................................. 20

*Rodman v. Safeway Inc.*,
  2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ...................................... 17

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................. 19

*Slezak v. City of Palo Alto*,
  2017 WL 2688224 (N.D. Cal. June 22, 2017) ......................................... 8

*Spano v. Boeing Co.*,
  2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ........................................ 16

*State of Fla. v. Dunne*,
  915 F.2d 542 (9th Cir. 1990) ................................................................. 12

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................... 7

*Stetson v. Grissom*,
  821 F.3d 1157 (9th Cir. 2016) ............................................................... 16

*Tadepalli v. Uber Techs., Inc.*,
  2015 WL 9196054 (N.D. Cal. Dec. 17, 2015) ......................................... 9

*Thieriot v. Celtic Ins.*,
  2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ...................................... 20

*Thomas v. MagnaChip Semiconductor Corp.*,
  2018 WL 2234598 (N.D. Cal. May 15, 2018) ...................................... 18

*Toumajian v. Frailey*,
  135 F.3d 648 (9th Cir. 1998) ................................................................. 14

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

*Urakhchin v. Allianz Mgmt. of Am., L.P.*,
  2018 WL 3000490 (C.D. Cal. 10 July 30, 2018) .......................................8, 13

*Urakhchin v. Allianz Mgmt. of Am., L.P.*,
  2018 WL 8334858 (C.D. Cal. July 30, 2018) ...................................... 14, 15, 17

*Viceral v. Mistras Grp., Inc.*,
  2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .....................................................8

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) ................................................................................12

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...........................................................................14

*Walsh v. CorePower Yoga* LLC,
  2017 WL 589199 (N.D. Cal. Feb. 14, 2017) .....................................................10

**Statutes**

28 U.S.C. §§ 1332(d), 1453, and 1711-1715 ........................................................5

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................7
Federal Rule of Civil Procedure 23(e).....................................................................1
Federal Rule of Civil Procedure 23(g).....................................................................6
Federal Rules of Civil Procedure 23(a) and (b)(1)..................................................6
Rules 23(e)(2).............................................................................................................7

**Other Authorities**

68 Fed. Reg. 75,632 ...................................................................................................6

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This unopposed Motion seeks final approval of the proposed Settlement in this action under the Employee Retirement Income Security Act ("**ERISA**"), as well as associated awards of Attorneys' Fees, Expenses, and a Case Contribution Award.

The Settlement[1] would provide $1,475,000 in monetary relief to members of the Settlement Class ("**Settlement Fund**"), who were participants and beneficiaries in the Plan during the Class Period ("**Class Period**.")  Notice has been distributed to the Settlement Class and there have been no objections to any aspect of the Settlement or the related applications to date.  (Vieira Decl., at ¶ 10; Kravitz Decl., at ¶ 9.)

In addition, consistent with Department of Labor ("**DOL**") regulations pertaining to the release of claims by a qualified retirement plan, an independent fiduciary was retained on behalf of the Plan to review and authorize the Settlement.  The independent fiduciary's report dated June 26, 2023 provides an additional touchstone for the Court to use to assess the fairness and adequacy of the Settlement and related applications.  (ECF #52-1, p. 161.)

Moreover, distribution of the Settlement Fund would largely occur by way of automatic distributions into the Plan for current participants and by check to former participants.  In light of the meaningful, immediate consideration that would be provided by the Settlement and positive reaction of the Settlement

---

[1] The Second Amended Settlement Agreement ("**Settlement Agreement**") and its exhibits are attached to the Kravitz Decl. filed in support of Plaintiff's Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement and Approval of Class Notice, and Memorandum of Points and Authorities in Support Thereof.  (ECF # 52-1, p. 103.)  Capitalized terms not otherwise defined herein shall have the same meaning as in the Settlement Agreement.

Class, Plaintiff respectfully submits the Settlement should be approved and the related applications granted.

On January 10, 2024, the Court entered the Preliminary Approval Order, which preliminarily approved the Settlement Agreement (ECF #63) between the Parties and conditionally certified the following class ("**Settlement Class**" or "**Class**") for Settlement purposes:

> "All current and former participants (including their beneficiaries or alternate payees) of the Hyatt Retirement Savings Plan (the "Plan") who [i] were employed in California, Illinois, or New York from March 10, 2016 through the date of the Preliminary Approval Order ("Class Period"), [ii] received the full value of tips paid by credit card outside of their regular paycheck, and [iii] had a deferral election in place when receiving those tips."

In addition to conditionally certifying the Class, the Court determined that the Settlement Agreement— a hard-fought compromise resulting from adversarial, arm's length negotiations—was sufficiently fair, reasonable, and adequate to warrant provisional approval.

To date, there have been no objections to any aspect of the Settlement Agreement or related applications following notice to the Settlement Class, and the terms of the Settlement Agreement have been reviewed and authorized by the independent fiduciary in an opinion and report that has been delivered to counsel and filed on the docket.  (ECF #52-1, p. 161.)  In light of the substantial benefits made available by the Settlement, and to avoid the burden, expense, and uncertainty of continued litigation, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Further, Class Counsel and Plaintiff have spent considerable time, resources, and efforts on the litigation of this action, with no guarantee of recovery.  Thus, Plaintiff submits that awards of Attorneys' Fees, Expenses, and

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

a Case Contribution Award in the amounts requested are appropriate in recognition of the efforts of Class Counsel and Plaintiff in pursuing the claims.

## II.    BACKGROUND

The basic facts and procedural history of this action are well-known to the Court and set forth in greater detail in the Court's Preliminary Approval Order. (ECF # 63.)  The Settlement Agreement was reached after multiple rounds of negotiations between experienced and informed counsel under the auspices of a well-respected neutral mediator, Robert A. Meyer, Esquire (the "**Mediator**") of JAMS. As a result, Plaintiff and Class Counsel believe the Settlement is fair, reasonable, and adequate and submit that it is in the best interest of the Class.

### A. The Settlement

#### 1. The Settlement and Released Claims

Following considerable investigation and careful consideration of Plaintiff's claims, the exchange of significant documents and information relating to the administration of the Plan, and the exchange of substantial information regarding liability and damages in connection with the mediation process, the Parties have reached agreement on the Settlement. The release of claims provided in Article 8 of the Settlement Agreement is tailored to the claims pursued in the litigation and for which consideration would be furnished under the Settlement.  (ECF #52-1, pp. 117-118.).  In exchange for this release of the claims, Defendants have agreed to establish a common fund in the amount of $1,475,000 to benefit participants and beneficiaries in the Plan during the Class Period. Consistent with the Preliminary Approval Order and Notice provided to the Class, the Settlement Fund will be used for the following purposes: (1) compensation to authorized Current and Former Plan Participants, Beneficiaries, and Alternate Payees of the Plan as described in Article 6 of the Settlement Agreement (ECF #52-1, pp. 115-116); (2) any Attorneys' Fees and Expenses approved by the Court; (3) all reasonable costs of administering the Settlement up to a cap of $14,450 (ECF

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

#52-1, p. 5, ¶ 26); and (5) payment of a Case Contribution Award to Plaintiff not to exceed $17,500, subject to Court approval. (ECF # 52-1, pp. 105, 117.).

### 2.  Distribution of Settlement Funds to Class Members

The Settlement Fund would be distributed on a pro rata basis to members of the Settlement Class pursuant to the plan of allocation ("**Plan of Allocation**") set forth in Article 6 of the Settlement Agreement.  (ECF #52-1, pp. 114-117.). Participants, Beneficiaries, and Alternative Payees with Active Accounts in the Plan need not take any further action to receive payment under the Settlement Agreement, as their accounts will automatically be credited the amount due to them under the Plan of Allocation. (ECF #52-1, p.27.)  As for Former Participants, and Beneficiaries and Alternate Payees who no longer have Active Accounts, these individuals will receive a check.  (ECF #52-1, pp. 116-117.)

No sooner than three hundred ninety-five (395) calendar days following the Settlement Effective Date, the Settlement Administrator will provide to the Plan any Net Settlement Amount remaining in the Settlement Fund after payments, including costs and taxes.  The Plan will deposit any such funds into the Plan's administrative budget account, the account used by the Plan to pay the Plan's administrative fees. (ECF #52-1, p.116.)

### B. Preliminary Approval of Class Notice

On January 10, 2024, the Court granted preliminary approval of the proposed Settlement Agreement.  (ECF #63.)

In compliance with the Preliminary Approval Order, SCS completed by February 24, 2024, the emailing or mailing of Settlement Notice via electronic and/or first-class mail to 1,898 Class Members. (Vieira Decl., at ¶ 7.).

Specifically, SCS provided the Court-approved Postcard Settlement Notice ("Postcard **Notice**") to more than 1,690 individuals via electronic mail and more than 208 individuals via first-class mail. (Vieira Decl., at ¶ 7.).  Of the 1,690 emails sent, 19 emails bounced back as non-deliverable.  SCS then sent the

Court-approved Postcard Notice via first-class mail to those Class Members on February 28, 2024.  (Vieira Decl., at ¶ 7.)  As of April 1, 2024, there were no objections to the Settlement.  (Vieira Decl., at ¶ 10; Kravitz Decl., at ¶ 9.)

Pursuant to the terms of the Settlement Agreement, SCS also established a website for the Settlement, which provides information about the case, the Settlement, and relevant deadlines and also made available a number of pertinent documents, including the following: (i) Notice; (ii) Former Participant Claim Form; (iii) Frequently Asked Questions, the Preliminary Approval Order; (iv) the Settlement Agreement including exhibits; and (v) the First Amended Class Action Complaint.  (Vieira Decl., at ¶ 5.)

Further, in accordance with the Settlement Agreement and the Preliminary Approval Order, SCS established a toll-free telephone number, to which Class Members could direct questions about the Settlement.  (Vieira Decl., at ¶ 5.). In addition to the foregoing, Notice of the Settlement has been distributed to the appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005.  (Viera Decl., at ¶ 3; Schwartz-Fenwick Decl., at ¶¶ 5-6.);  *see also* 28 U.S.C. §§ 1332(d), 1453, and 1711-1715.  SCS has provided periodic updates to counsel of expenditures made in connection with administration of the Settlement, and has provided any and all information that was requested by the Parties or their counsel. (Kravitz Decl., at ¶ 23.)

**C. The Settlement and Related Applications Have Been Reviewed and Authorized by an Independent Fiduciary on Behalf of the Plan**

To further ensure that the Settlement Agreement is fair, reasonable, and adequate, Defendants retained an independent fiduciary, Fiduciary Counselors ("Independent Fiduciary"), to approve and authorize the Settlement on behalf of the Plan pursuant to DOL regulations pertaining to the release of litigation claims on behalf of a qualified retirement plan.  (ECF #52-1, pp. 108-109.).

All Parties and their counsel provided the Independent Fiduciary with sufficient information to enable the Independent Fiduciary to review and evaluate

the Settlement, including the relevant pleadings and papers filed on the docket, certain discovery materials, confidential Settlement documents, and any other materials requested. (ECF # 52-1, pp. 163-164.)

In addition, counsel for the Parties each participated in conference calls and email exchanges with the Independent Fiduciary to review certain matters related to the litigation and Settlement, and the Parties answered follow up questions from the Independent Fiduciary. (*Id.*)

The Independent Fiduciary complied with the appropriate criteria in reaching its conclusion that the terms of the Settlement are fair, reasonable, and adequate. (68 Fed. Reg. 75,632; ECF # 52-1, pp. 169-172.)

## III.   THE COURT SHOULD MAINTAIN CERTIFICATION OF THE SETTLEMENT CLASS AND GRANT FINAL APPROVAL OF THE SETTLEMENT

### A. The Court Has Already Provisionally Certified the Settlement Class and Appointed Plaintiff's Counsel as Class Counsel

In its January 10, 2024 Order, the Court provisionally certified the Settlement Class upon findings that each of the requirements of Rule 23(a) and 23(b)(1) have been met, and appointed Plaintiff as Class Representative and Miller Shah LLP and the Law Office of D. Joshua Staub as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g). (ECF # 63.)  For the reasons identified in the Court's Preliminary Approval Order and in Plaintiff's Unopposed Motion for Preliminary Approval, the above-defined Settlement Class meets the requirements of Federal Rules of Civil Procedure 23(a) and (b)(1). None of the circumstances that warranted provisional certification have changed; thus, the Settlement Class should be maintained through entry of a final judgment.

### B. The Settlement is Fair, Reasonable, and Adequate

"The standard for reviewing class action settlements at the final approval stage is well--settled. Rules 23(e)(2) states that the district court may only

6

approve the settlement if 'it is fair, reasonable, and adequate.'" *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016) (citing Fed. R. Civ. P. 23). In determining whether a settlement meets these requirements, courts look to numerous factors, including the following:

(1) the strength of plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed, and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003) (citation and internal quotation marks omitted). The relative importance of these factors depends upon the unique facts and circumstances of a given case, and "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . ." *Cotter*, 193 F. Supp. 3d at 1035 (citations and alterations omitted). "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Campbell v. Facebook, Inc*., 951 F.3d 1106, 1121 (9th Cir. 2020) (same).

The Court has provisionally certified the Settlement Class and has preliminarily approved the terms set forth in the Settlement Agreement. (ECF 63, p.4.)  The factors considered at final approval mirror those contemplated at preliminary approval. Having already preliminarily approved the terms of the Settlement Agreement, and because there have been no intervening circumstances that would alter that conclusion, the Court should find the same here, as Notice has been completed in accordance with the Court's Preliminary

Approval Order and all of the relevant factors support final approval of the Settlement as fair, reasonable, and adequate. *See Cotter*, 193 F. Supp. 3d at 1036–37 (recognizing that a court's inquiry at final approval is equally careful as the preliminary approval analysis).

      1.  <u>The Strength of Plaintiff's Case and the Risk, Expense, and Complexity of Further Litigation</u>

Although Plaintiff believes there is strong legal and factual support for his claims, there is inherent risk in continued litigation of these complex ERISA claims. *See e.g.*, *Johnson v. Fujitsu Tech. and Bus. Of Am., Inc.*, 2018 WL 2183253, at *5 (N.D. Cal. 2018). When the Parties negotiated the Settlement, further litigation promised to be similarly lengthy, complex, risky, and involving numerous competing experts on liability issues concerning Plaintiff's claims and Defendants' defenses, as well as the Plan's alleged losses. The Parties likely would have filed additional dispositive, expert exclusion, and other pretrial motions. Trial presentations would rely heavily on competing expert testimony and likely would have given way to a complex appeal. Thus, Plaintiff faced meaningful challenges in his ability to obtain a recovery on behalf of the Plan and Settlement Class, even setting aside the additional complexity and delay of likely appeals, which strongly supports the final approval of the Settlement. *See Urakhchin v. Allianz Mgmt. of Am., L.P.*, 2018 WL 3000490, at *4 (C.D. Cal. February 6, 2018).

The Settlement Agreement is a product of an extensive arm's-length process in recognition of the risks associate with further litigation. *See Urakhchin*, 2018 WL 3000490, at *4. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016); *see also Slezak v. City of Palo Alto*, 2017 WL 2688224, at *5 (N.D. Cal. June 22,

2017) (finding the "likelihood of fraud or collusion [wa]s low . . . because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator.").

The Mediator has considerable experience in assessing ERISA disputes and the Parties only reached the Settlement after a full-day mediation and follow-up discussions with the assistance of the Mediator. (Kravitz Decl., at ¶¶ 3, 5.) The mediation process also involved the exchange of additional information to assist the Parties in evaluating the strengths and weaknesses of their respective positions. (Kravitz Decl., at ¶¶ 3, 5.)  Class Counsel and Defendants' counsel are experienced in ERISA litigation, and each possess a thorough understanding of the factual and legal issues involved in the action.  *See Tadepalli v. Uber Techs., Inc.*, 2015 WL 9196054, at *9 (N.D. Cal. Dec. 17, 2015) ("Settlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel").

2. The Settlement Recovery

Plaintiff and Class Counsel submit, based on their experience and expertise, that the Settlement Agreement—which provides monetary relief of approximately 57% of the upper end of Plaintiff's estimated damages-- represents a significant benefit conferred on the Settlement Class and is well within the accepted range of recovery in class action settlements across the country and in this district.  *Fleming v. Impax Lab'ys Inc.*,2021 WL 5447008, at *10 (N.D. Cal. 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *In re MyFord Touch Consumer Litig*., 2019 WL 1411510, at *10 (N.D. Cal. 2019) (approving settlement providing for 5.7% of total possible recovery); *Deaver v. Compass Bank*,2015 WL 8526982, at *7 (N.D. Cal. 2015) (10.7% of total damages); *In re Lithium Ion Batteries Antitrust Litig*.,

2017 WL 1086331, at *4 (N.D. Cal. 2017) (overruling objections to settlement amount representing between 2.2% and 11.2% of total possible damages).

### 3. The Stage of Proceedings and Extent of Discovery Completed

"The extent of the information and documents exchanged by the Parties and the stage of the litigation are both indicators of [Class Counsel's] familiarity with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). The Parties exchanged information and documents to understand the nature of claims and extent of the losses when they agreed to mediate the case and enter into the Settlement Agreement. *See supra*, II.A.1. Class Counsel conducted substantial investigation, both before and during the administrative review process and prior to the filing of the litigation.  (Kravitz Decl., at ¶ 2.) Importantly, "[d]iscovery can be both formal and informal" and, here, Plaintiff and Class Counsel engaged in significant investigation of the Parties' claims and defenses even before filing the initial complaint, and since then have continued to exchange significant information and documents relating to the claims of Plaintiff. *See Urakhchin*, 2018WL 3000490, at *4.

### 4. The Experience and Views of Class Counsel

Class Counsel has significant experience in class action litigation generally and ERISA breach of fiduciary duty litigation in particular, and are of the opinion that the Settlement Agreement is fair and reasonable. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision*, 559 F. Supp. 2d at 1043. This presumption is especially warranted based on the opinion of "experienced plaintiffs' advocates and class action lawyers." *Does I v. Gap, Inc*., 2002 WL 1000073, at *13 (D.N. Mar. Is. May 10, 2002); *Walsh v. CorePower Yoga* LLC, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) (holding that experience of counsel favored settlement approval).

Class Counsel have analyzed the claims and defenses at issue in the litigation, as well as the Plan's potential associated losses, and are of the opinion that the Settlement represents a favorable compromise in the face of significant litigation risk.  Further, the Parties have submitted the amended Settlement Agreement to the Independent Fiduciary, which found that the proposed applications are reasonable, providing an additional touchstone beyond the opinion and experience of Class Counsel. (ECF #52-1, p. 168-169.)  The Parties have also relied on the knowledge and experience of an expert in judging the fairness of this Agreement.  (Kravitz Decl., at ¶¶ 6, 16-17.)

In sum, the Settlement Agreement is the product of arm's-length negotiations by experienced and well-informed counsel, adequately reflects the strength of the Parties' claims and defenses, is based on sufficient discovery and information, and provides significant relief to the Settlement Class. Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits final approval.

### 5. The Reaction of Class Members

The reaction of the Settlement Class to the Settlement strongly supports its final approval. Indeed, "[a] small number of objections at the time of the fairness hearing may raise a presumption that the settlement is favorable to the class." *Omnivision*, 559 F. Supp. 2d at 1043 (approving settlement where three of over 57,000 potential class members objected); *see also Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent). Notice of the Settlement with specific information about its material terms, as well as each of the associated applications, has been distributed to 1,898 Settlement Class members and no objections have been submitted. (Vieira Decl., ¶¶ 7, 10; Kravitz Decl., ¶ 9.)  Related to the reaction of the Settlement Class, the Independent Fiduciary reviewed and authorized the

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

terms of the amended Settlement Agreement and the proposed applications for case fees and costs. (ECF #52-1, pp. 168-169.)

### C. Plaintiff's Request for Attorneys' Fees, Expenses, and Case Contribution Award is Fair, Reasonable, and Appropriate

"It is well established that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Omnivision*, 559 F. Supp. 2d at 1046 (quoting *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)) (internal quotation marks omitted). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir.2010)). In the Ninth Circuit, the percentage method is the prevailing method by which district courts assess and award fees from a common fund in class action litigation. *See Omnivision*, 559 F. Supp. 2d at 1046. Regardless of the method used, the Ninth Circuit requires only that fee awards in common fund cases be reasonable under the circumstances. *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990).

Courts determining fee awards using the percentage method generally look to the following:

(1) the results achieved;

(2) the risk of litigation;

(3) the skill required and the quality of work;

(4) the contingent nature of the fee and the financial burden carried by the plaintiff's and class counsel]; and

(5) awards made in similar cases.

*See Omnivision*, 559 F. Supp. 2d at 1046.

### 1. The Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *See Omnivision*, 559 F. Supp. 2d at 1046 (finding recovery of 9% of possible damages to be substantial based on average recovery in similar litigation, such that requested fee award above benchmark was warranted). The independent fiduciary found the amount of the Settlement is reasonable:

> To calculate losses, Defendants provided data relating to the missed
> deferral opportunities and a schedule for the average weighted returns to
> determine lost earnings.  Plaintiff used the data but applied the Department
> of Labor's VFCP Calculator to calculate lost earnings The size of the
> Settlement is $1,475,000, which represents approximately 57% of the
> upper end of Plaintiff's estimated damages. The $1,475,000 Settlement
> Amount is a fair and reasonable recovery given the defenses the
> Defendants would have asserted, the range of potential damages, the risks
> involved in proceeding to trial, and the possibility of reversal on appeal of
> any favorable judgment.

(ECF #52-1, p. 171.)  The percentage of the recovery falls in the range of or exceeds prior approved settlements in ERISA class actions.  *See Urakhchin v. Allianz Mgmt. of Am., L.P.*, 2018 WL 8334858, at *5 (C.D. Cal. July 30, 2018); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding an ERISA settlement representing one-sixth, or 16 percent, of recovery, fair and adequate); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 2017 WL 6623031, at *6 (N.D. Cal. Dec. 28, 2017) (approving ERISA settlement recovery of 25% of possible damages). The exemplary result

achieved on behalf of the Plan and the Settlement Class counsels in favor of the requested fee award.

### 2. The Risk of Litigation

"The risk that further litigation might result in Plaintiff not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *See Omnivision*, 559 F. Supp. 2d at 1046 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)).  Courts in the Ninth Circuit have acknowledged, "ERISA 401(k) litigation is risky and even had Plaintiffs prevailed on the merits, there would be significant uncertainty as to a damage award following trial." *Urakhchin*, 2018 WL 8334858, at *6. Moreover, any successful trial would almost certainly be followed by an appeal that would result in additional risk and delay to the Settlement Class. The Settlement represents a reasonable compromise that alleviates the risks associated with further litigation.

### 3. The Skill Required and Quality of Representation

ERISA claims such as Plaintiff's claims deal with a complex area of the law that necessitates fierce litigation on highly complicated and financially sophisticated topics. *See Toumajian v. Frailey*, 135 F.3d 648, 650 (9th Cir. 1998) ("Once again the mysteries of the Employee Retirement Income Security Act of 1974 ("ERISA")—a statute intended to provide a system of uniformity and simplicity in the complex regulatory field of employee benefits—provide added complexity in this action."). The litigation of such claims frequently relies on the testimony of numerous competing experts on liability issues and financial losses, and Class Counsel's understanding of the complex regulatory framework provided by the ERISA statute enabled them to work effectively with the experts they engaged in order to effectively prepare the case. Class Counsel have extensive experience litigating ERISA fiduciary breach cases and benefits litigation (Kravitz Decl., at ¶¶ 6, 16-17.)  Throughout the pendency of the case,

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

the Parties' counsel have leveraged their experience and resources to rigorously pursue recovery on behalf of the Plan and protest the interests of all Class Members, including by comprehensively investigating and evaluating the claims forming the basis of the Action. (Kravitz Decl., at ¶ 2.)  Based on Class Counsel's excellent result for the Class, the representation of the Class was of the highest quality. In addition, Defendants were represented by some of the most qualified ERISA practitioners in the country. (Kravitz Decl., at ¶¶ 16-17.)  Accordingly, achieving a favorable settlement against such well-represented adversaries is a testament to the skill and quality of Class Counsel's representation of the Class.

4.  <u>The Contingent Nature of the Fee and Financial Burden Carried by Plaintiff</u>

Class Counsel prosecuted the class action on a contingent fee basis and advanced all associated costs, with no guaranty of compensation in the event the litigation did not result in a recovery for the Settlement Class.  (Kravitz Decl. ¶¶ 12-15.)  "The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Urakhchin*, 2018 WL 8334858, at *6 (citing cases). Class Counsel have devoted in excess of 620 hours over two years to this litigation, including a substantial pre-filing investigation. (Kravitz Decl., at ¶ 14, Exh. A (lodestar chart).)  Moreover, Class Counsel advanced over $14,000 in the interest of providing effective representation to the Settlement Class. (Kravitz Decl., at ¶ 14, Exh. B (expenses).)  Class Counsel's risk of nonpayment in light of these efforts merits the requested fee award. *See Omnivision*, 559 F. Supp.2d at 1047.

5.  <u>Awards in Similar Cases</u>

Although the Ninth Circuit has established a general benchmark of 25% in contingent fee litigation, district courts have noted that "in most common fund

cases, the award exceeds that benchmark." *See Omnivision*, 559 F. Supp. 2d at 1047.  In securities litigation, for example, a district court concluded that, where a court adopts the percentage method, "absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *In re Activision Sec. Litig*., 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

In ERISA fiduciary breach litigation, one-third is the most common percentage awarded. *See, e.g., Garthwait v. Eversource*, No. 3:20-cv-00902-JCH, ECF # 205 (D. Conn.) (awarding one-third of common fund as attorneys' fees); *Kruger v. Novant Health, Inc*., 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016); *Spano v. Boeing Co.*, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016) (same); *Main v. American Airlines, Inc*., Case No. 4:16-cv-00473, ECF #138 (N.D. Tex. Feb. 21, 2018) (same).  The requested 25 percent is commensurate with the risk assumed by Class Counsel and awards in other similar cases. It also bears noting that the Independent Fiduciary has reviewed the fee request and determined that the request is reasonable in light of the efforts expended by Class Counsel in prosecuting the litigation. (ECF #52-1, p. 169.)  Likewise, all members of the Settlement Class received notice of the anticipated requests for attorneys' fees and no member of the Settlement Class has objected to the anticipated requests.  (Vieira Decl., ¶ 10; Kravitz Decl., ¶ 9.)

6.  Lodestar Cross-Check

As a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *See Omnivision*, 559 F. Supp. 2d at 1048. Under the lodestar method, the "lodestar should be computed either using an hourly rate that reflects the prevailing rate as of the date of the fee request to compensate Class counsel for delays in payment inherent in contingency-fee cases or using historical rates and compensating for delays with a prime-rate enhancement." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016). A

reasonable hourly rate "must be based on the 'experience, skill, and reputation of the attorney requesting fees' as well as 'the rate prevailing in the community for similar work performed by [comparable] attorneys . . . .'" *Rodman v. Safeway Inc.*, 2018 WL 4030558, at *6 (N.D. Cal. Aug. 23, 2018) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), amended by 808 F.2d 1373 (9th Cir. 1987).)[2]

Though the lodestar figure is "presumptively reasonable," *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988), it is well established that a court "may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth Headset Prod.Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), abrogated on other grounds by *City of Burlington v. Dague*, 505 U.S. 557 (1992)); *see Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).

Calculations under the lodestar method, taking into consideration any positive multipliers, confirm that a fee award of 25% is reasonable. Indeed, Class Counsel have spent more than 620 hours prosecuting this litigation (excluding the additional time anticipated to be spent on administering the Settlement and addressing any inquiries by members of the Settlement Class following final

---

[2] The hourly rates charged by Class Counsel are in line with hourly rates found to be reasonable by courts in the Ninth Circuit in similar ERISA litigation, even several years ago. *See Urakhchin*, 2018 WL 8334858, at *6 (finding—in an order issued six years ago—fee award to be supported by lodestar cross-check based on billing rates between $600 and $825 per hour for attorneys with more than ten years' of experience, $325 to $575 per hour for attorneys with 10 or fewer years of experience, and $250 per hours for paralegals and clerks.)

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

approval).  (Kravitz Decl., at ¶ 14; Staub Decl., at ¶ 4.)  This implies a lodestar figure of $592,385. *See id*. Even before any additional post-approval time is considered, an award of 25% of the Settlement Fund would represent a lodestar multiplier of .62, well within the range of multipliers approved in the Ninth Circuit. *See Omnivision,* 559 F. Supp. 2d at 1048 (approving fee award that represented lodestar multiplier of 1.33).  In complex financial litigation such as this, courts have often approved multipliers ranging between 1 and 4. *See In re Chiron Corp. Secs. Litig.*, 2007 WL 4249902, *17–18 (N.D. Cal. Nov. 30, 2007) (surveying fee awards). "Foremost among [reasonableness] considerations" of the lodestar figure is "the benefit obtained for the class." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (internal citation omitted); *see McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir.2009) (ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff").  The Court has already agreed that the Settlement Agreement is within the range of reasonableness to warrant preliminary approval.  (ECF #63, p. 6.).  At 57% of the upper end of Plaintiff's estimated damages, the Settlement would represent a significant benefit conferred on the Settlement Class as a result of Class Counsel's efforts. Thus, under all of the circumstances, a lodestar cross-check confirms the reasonableness of the fee request.

7. <u>The Court Should Award the Requested Reasonable Expenses to Plaintiff's Counsel</u>

Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision*, 559 F. Supp. 2d at 1048. Such costs typically include "photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses." *Thomas v. MagnaChip Semiconductor Corp*., 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018).  Class Counsel's expenses were all reasonably necessary to the conduct of the litigation. The most significant

18

expenses are expert witness fees and mediation fees, without which the case could not have been most effectively prepared and settled. (Kravitz Decl., ¶ 15, Ex. B (expense chart).)  All expenses for which reimbursement is sought were necessary for the prosecution of this litigation. (Kravitz Decl., ¶ 15.)

District courts have explained that, to support an expense award, "Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable." *Hefler v. Wells Fargo& Co*., 2018 WL 6619983, at *16 (N.D. Cal. Dec. 18, 2018).  Plaintiff has done so here, demonstrating expenses incurred of $14,636.89. (Kravitz Decl., **Ex. B** (expense chart).)  The requested award of expenses to Class Counsel is reasonable and should be granted.[3]

### 8.  The Court Should Award the Requested Case Contribution Award

Case contribution awards "that are intended to compensate class Representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 943 (9th Cir. 2015) (citation omitted). Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 958–59 (9th Cir. 2009).

Plaintiff has actively participated in the litigation and assisted Class Counsel in prosecuting the case.  Plaintiff provided approximately 100 hours of time working on issues relating to this case, including (i) finding the alleged error

---

[3] Plaintiff notes that Miller Shah LLP does not seek reimbursement of any travel expenses incurred in connection with its representation of the Settlement Class, despite actually incurring such expenses in the course of this litigation. This represents Class Counsel's efforts to minimize expenses charged to the Settlement Class and highlights the reasonableness of the requested reimbursement of expenses.

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

in his 401k account; (ii) evaluating the Plan and account statements; (iii) talking to management and co-workers about the claims; (iii) meeting with counsel and the expert witness hired to help prosecute the action; (iv) preparing for and attending the mediation; and (v) working with counsel on the complaint and the Settlement Agreement. (Kravitz Decl., ¶ 8; ECF #52-1, p.169.) Consistent with awards regularly granted under similar circumstances, Plaintiff should be compensated for his work done in support of the litigation and for assisting Class Counsel in achieving a strong settlement on behalf of the Class, as well as the reputational and other risks they undertook in bringing this action. *See Johnson*, 2018 WL 2183253, at *8 (granting case contribution awards based on class counsel's attestation as "to each class representative's cooperation and work" in the case, including providing information to counsel, producing documents and responding to discovery request, communicating with counsel and remaining informed about the case, participating in the mediation process, and approving the settlement agreement).

In addition, as with the requests for attorneys' fees and expenses, the Independent Fiduciary reviewed the Amended Settlement Agreement and proposed application for a case contribution award and concluded that the case contribution award of $17,500 is reasonable. (ECF # 52-1, p. 169.)

Lastly, notice of the anticipated request was provided to all members of the Settlement Class and there have been no objections to the award. (Vieira Decl., ¶ 10; Kravitz Decl., ¶ 9.)

Accordingly, Plaintiff requests that the Court approve a case contribution award in the amount of $17,500 to Plaintiff. This sum represents approximately 1.2 percent of the Settlement Fund. *See Thieriot v. Celtic Ins*., 2011 WL 1522385, at *7–8 (N.D. Cal. Apr. 21, 2011) (approving service awards of 1.8% of gross settlement fund); *Ridgeway v. Wal-Mart Stores, Inc*., 269 F. Supp. 3d. 975, 1002 (N.D. Cal. 2017) (awarding $15,000 for each of 9 plaintiffs, which combined

PLAINTIFF'S NOTICE OF AND UNOPPOSED MOTION FOR FINAL APPROVAL

for 0.22% of $60 million settlement); *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1299 (S.D. Cal. 2017) (awarding $15,000 for each of 5 plaintiffs, which combined for 0.3% of $25 million settlement).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Unopposed Motion for Final Approval of the Settlement, Attorneys' Fees, Expenses, and Class Contribution Award.

Dated: April 5, 2024

/s/ Ronald S. Kravitz
Ronald S. Kravitz
MILLER SHAH LLP
456 Montgomery Street, Suite 1900
San Francisco, CA 94104
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: rskravitz@millershah.com

D. Joshua Staub (SBN 170568)
LAW OFFICE OF D. JOSHUA STAUB
13015 Washington Blvd.
Los Angeles, CA 90066
Telephone: (310) 929-5269
Email: josh@djoshuastaub.com